

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.　　　　　　　　　　　　　　　SUPERIOR COURT
　　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　　　NO. 11-1381-E

HENRIETTA EATON

vs.

FEDERAL NATIONAL MORTGAGE ASSOCIATION & another[1]

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The plaintiff Henrietta Eaton ("Eaton") brought this action against defendants Federal National Mortgage Association ("Fannie Mae") and Green Tree Servicing, LLC ("Green Tree") (collectively, "Defendants"). The matter is before the court on Eaton's motion for a preliminary injunction to enjoin Fannie Mae from prosecuting a summary process eviction case brought against Eaton in the Boston Housing Court. For the reasons discussed below, Eaton's motion for a preliminary injunction is **ALLOWED**.

## BACKGROUND

On September 12, 2007, Eaton executed a note in favor of BankUnited, FSB in the amount of $145,000 (the "Note"). To secure that obligation, Eaton contemporaneously granted a mortgage on her home to Mortgage Electronic Registration Systems, Inc. ("MERS") acting as nominee for Bank United, FSB (the "Mortgage"). MERS subsequently assigned the Mortgage to Green Tree; the assignment does not reference the Note.

---

[1] Green Tree Servicing, LLC

Due to Eaton's failure to make payments on the Note, Green Tree moved to foreclose on her home. On November 24, 2009, Green Tree conducted a foreclosure auction where it submitted the highest bid of $170,185.89. Green Tree later assigned its rights to the winning bid to Fannie Mae.

On January 25, 2010, Fannie Mae commenced a summary process action in Boston Housing Court to evict Eaton. In response, Eaton filed a counterclaim, contending that the foreclosure was invalid. Eaton maintained that because Green Tree did not possess the Note at the time of the foreclosure, it did not have the authority to enforce the Note through the foreclosure process. After oral argument and hearing on the issue, the Housing Court granted a stay of the summary process action allowing Eaton to seek relief in the Superior Court. Eaton now seeks a preliminary injunction to prevent the eviction action from proceeding further.

The Defendants have produced a photocopy of the Note. It is endorsed in blank and does not bear an allonge indicating when it was endorsed or who held it at the time of the foreclosure. For the purposes of this motion only, Defendants stipulate that Green Tree did <u>not</u> hold the Note when the foreclosure occurred.

## DISCUSSION

To obtain injunctive relief a plaintiff must demonstrate that: (1) she is likely to succeed on the merits of her claim; (2) irreparable harm will result absent the injunction; and (3) the irreparable harm outweighs any harm the defendant will suffer if the injunction is granted. <u>Packaging Indus. Grp., Inc.</u> v. <u>Cheney</u>, 380 Mass. 609, 617 (1980).

A. <u>If an injunction is not granted, Eaton will suffer irreparable harm that outweighs any potential harm to the Defendants.</u>

Eaton has clearly demonstrated that she will suffer irreparable harm without an injunction and that such harm outweighs any harm Fannie Mae may suffer if an injunction is granted. Absent an injunction, Fannie Mae will proceed with its eviction action against Eaton and she will lose her home. The loss of one's property is a considerable harm. See <u>Strayton</u> v. <u>Champion Mortg. (In re Strayton)</u>, 360 B.R. 8, 11 (Bankr. D. Mass. 2007) (in granting injunction based on debtor's claim of invalid foreclosure, finding that "the loss of the [d]ebtor's home would constitute an irreparable harm"). Fannie Mae, conversely, is likely to face only financial loss if an injunction is granted. Significantly, any such loss will be mitigated by monthly use and occupancy payments which have been ordered by the Housing Court during the pendency of this action

B. <u>Eaton is likely to succeed on the merits of her claim of invalid foreclosure.</u>

Eaton argues that the foreclosure of her home was invalid because Green Tree did not hold the Note when the foreclosure occurred. The Defendants, however, contend that because Green Tree possessed the Mortgage, it had sufficient authority to foreclose on Eaton's home. This court finds that Eaton is likely to succeed on the merits of her claim.

   1. *Under the common law, both mortgage and mortgage note must be held by the foreclosing entity to validly foreclose.*

In the course of commerce, the two instruments acquired by a lender when a mortgage loan is funded may thereafter be separately transferred or assigned; the promissory note (evidencing the debt) and the mortgage note (securing the debt) may travel independently. <u>Lamson & Co.,Inc. v. Abrams</u>, 305 Mass. 238, 245 (1940); M.G.L.

3

218 s. 28. But as this court reads the common law, the two instruments must be re-united in order to effectively foreclose the mortgagor's right to redeem the property. See Wolcott v. Winchester, 81 Mass. 461, 465 (1860) ("the possession of the debt [is] essential to an effective mortgage . . . without it [one cannot] maintain an action to foreclose the mortgage."); Crowley v. Adams, 226 Mass. 582, 585 (1917) ("possession of the note [is] essential to an enforceable mortgage without which [no] mortgage could effectively be foreclosed..") It appears that this possession must be actual and physical. See Geffen v. Paletz, 312 Mass. 48, 54 (1942) ("the [assignee of the mortgage] never had possession of the [promissory] note and consequently, is not a 'Holder' or 'Bearer'").

Thus, as Eaton accurately points out, Massachusetts courts have historically held that one must hold both the mortgage and the mortgage note before initiating foreclosure. This rule flows from the fact that a mortgage, by definition, is simply a security for the note. Private Lending & Purchasing, Inc. v. First Am. Title Ins. Co., 54 Mass. App. Ct. 532, 537 (2002). It is "but an incident to the debt." Perry v. Oliver, 317 Mass. 538, 541 (1945); see General Ice Cream Corp. v. Stern, 291 Mass. 86, 89 (1935). Without the mortgage note, a mortgagee holds nothing more than "a mere technical interest" in trust for the note holder. Wolcott, 81 Mass. at 465; see Morris v. Bacon, 123 Mass. 58, 59 (1877) (mortgagee without mortgage note holds "naked legal title" in trust); Young v. Miller, 72 Mass. 152, 154 (1856) (mortgagee without mortgage note holds a "barren fee" in trust); Sanger v. Bancroft, 78 Mass. 365, 367 (1859) ("A mortgage cannot be made available without connecting it with the debt or duty secured thereby. To one who has not the debt, it is of no value as property, as it could at most be only resorted to as a trust for the benefit of the holder of the note."). The mortgage note has a parasitic quality, in

4

that its vitality depends on the promissory note. See <u>Geffen</u> at 54. ("if the debt itself were not in existence, the assignee has ...at most a naked legal title to the mortgage.)

There is no inconsistency between this analysis and the recent decision in <u>U.S. Bank National Association v. Ibanez</u>, 458 Mass. 637 (2011). <u>Ibanez</u> restated common law of the Commonwealth to the effect that the assignment of a mortgage must be effective *before* foreclosure in order to be valid. In <u>Ibanez</u>, it was undisputed that the foreclosing entities were the note holders. The plaintiffs argued that, as note holders, they had a sufficient financial interest to foreclose. Not so, said the Court; as note holders separated from the mortgage due to a lack of effective assignment, they had only a beneficial interest in the mortgage note. The Court held that the power of sale statute, by its terms, granted that authority to the mortgagee, not to the owner of the beneficial interest.[2] The SJC did not address the authority of the assignee of the mortgage not in possession of the note to foreclose.

Emphasizing the age of the Massachusetts appellate cases upon which Eaton relies, Defendants argue that G. L. c. 244, § 14 has supplanted the rule articulated in <u>Wolcott</u> and related cases.

2. *G. L. c. 244, § 14 has not superseded the common law.*

General Laws c. 244, § 14 provides that:

> The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized or required by the power [of sale]. . . .

---

[2] Such power can be rightfully exercised by "the mortgagee or his executors, administrators, successors or assigns." M.G.L. c. 183 §21

The Defendants observe that that this statute is directed solely to the *mortgagee* without reference to the holder of the underlying note. They invite this court to consider the plain meaning of the statute. However, the plain meaning of *mortgagee,* as intended by the legislature at enactment and the present day interpretation of the term, may well differ.[3]

Moreover, this court must be cautious before interpreting a statute "as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." Brear v. Fagan, 447 Mass. 68, 72 (2006) (quoting Pineo v. White, 320 Mass. 487, 491 (1946)) (internal quotes omitted); see Commercial Wharf E. Condo. Ass'n v. Waterfront Parking Corp., 407 Mass. 123, 129 (1990) (court should not presume that Legislature intended "a radical change in the common law without a clear expression of such intent."). No showing has been made to date that the Legislature clearly intended to modify the common law to accommodate the present interpretation.[4]

The legislative history of G. L. c. 244, § 14 reveals no such intent. Chapter 244, § 14 has its roots in an 1857 statute, which also uses the term *mortgagee* without reference to the note holder. The 1857 statute states in relevant part:

> In all cases, in which a power of sale is contained in a mortgage deed of real property, the mortgagee, or any person having his estate therein, or in or by such power authorized to act in the premises, may, upon a breach of the condition thereof, give such notices and do all such acts as are authorized or required by such power . . . .

---

[3] Black's Law Dictionary defined *mortgagee* as "he that takes or receives a mortgage" in the First through Fifth editions spanning 1891 to 1979. It was rendered gender-neutral in the Sixth edition. In 1999, the term was defined "one to whom property is mortgaged; the mortgage-creditor, or lender—also termed mortgage- holder"; this terminology is retained into the Ninth edition. This is persuasive of the proposition that, leaving aside conveyancers, those having reason to use the term in general legal discourse intended *mortgagee* to mean the holder of the note and the mortgage, and not the assignee of the mortgage only.

[4] No appellate court of the Commonwealth has ratified the Defendants' interpretation, although it has been adopted by a number of trial courts.

St. 1857, c. 229, §1. This statute was in effect when the Wolcott and Crowley courts observed that one must hold the note in order to enforce it through foreclosure. Thus, the courts evidently believed that the term *mortgagee* as used in the 1857 statute presumes that the mortgage holder is also the holder of the mortgage note. Because G. L. c. 244, §14 is so similar to the 1857 statute, the assumption underlying the 1857 statute must exist in §14.

It is also apparent from the larger context of G. L. c. 244 that the Legislature likely did not intend the word *mortgagee* to mean that one can initiate a foreclosure without the note. General Laws c. 244, §17B which deals with the deficiency after foreclosure provides in relevant part:

> No action for a deficiency shall be brought after June thirtieth, nineteen hundred and forty-six *by the holder of a mortgage note* or other obligation secured by mortgage of real estate *after a foreclosure sale by him* taking place after January first, nineteen hundred and forty-six unless a notice in writing of the *mortgagee's intention to foreclose the mortgage* has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address *then known to the mortgagee*, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as aforesaid shall be a sufficient notice, and such an affidavit made within the time specified shall be prima facie evidence in such action of the mailing of such notice. (*Italics supplied.*)

The section implicitly assumes that the holder of the mortgage is also the holder of the mortgage note. It uses the term *mortgagee* and *holder of a mortgage note* interchangeably. The use of the term *mortgage* note when modern parlance would call for *promissory* note reflects a common understanding of generic terms, back when the

statute was enacted. The phrase "foreclosure sale by him" in the first sentence refers to the holder of the mortgage note, undermining Defendants' interpretation.

"Where two statutes deal with the same subject they should be interpreted harmoniously to effectuate a consistent body of law." Boston Hous. Auth. v. Labor Relations Comm'n, 398 Mass. 715, 718 (1986). Sections 14 and 17B both address the collection of a loan secured by a mortgage. In order for the two provisions within G. L. c. 244 to be read harmoniously, the term *mortgagee* must refer to a party in possession of both the mortgage and the note securing it.[5]

To support their reading of *mortgagee* in G. L. c. 244, § 14, the Defendants rely on a Massachusetts federal district court case and a Massachusetts Superior Court case that rejected arguments similar to Eaton's based on the statute's language. See Valerio v. U.S. Bank, N.A., 716 F. Supp. 2d 124, 128 (D. Mass. 2010) (noting statute governing statutory power of sale is addressed to mortgagees rather than note holders); Adamson v. Mortgage Elec. Registration Sys., Inc., 2011 Mass. Super. LEXIS 32 at *9-10 (Mass. Super. 2011) (same); see also Aliberti v. GMAC Mortgage, LLC, 2011 U.S. Dist. LEXIS 45858 at *15 (D. Mass. 2011) (citing Valerio); McKenna v. Wells Fargo Bank, N.A, U.S. Dist. LEXIS 28719 at *7 (D. Mass. 2011) (same). These decisions were based on the plaintiffs' failure to cite supporting authority. The Valerio court emphasized plaintiff's failure to provide it any Massachusetts case law on the subject. 716 F. Supp. 2d at 128.

---

[5] The Defendant's usage of "mortgagee" also renders the statute inconsistent with G. L. c. 106, § 3-301, a statute passed after G. L. c. 244, § 14. Subject to certain exceptions not relevant here, under § 3-301, the only person entitled to enforce a promissory note is the holder of the note. Citing Pemstein v. Stimpson, 36 Mass. App. Ct. 283 (1994), the Defendants argue that § 3-301 does not govern promissory notes. Pemstein, however, only stands for the proposition that Article 9 of the Massachusetts version of the Uniform Commercial Code ("UCC") does not apply to a guarantee contract. In contrast, First Nat. Bank of Cape Cod v. North Adams Hoosac Sav. Bank suggests that Article 3 is applicable to mortgage notes. 7 Mass. App. Ct. 790, 796 (1979) ("The Uniform Commercial Code continues to recognize the negotiability of a note which is secured by a real estate mortgage.").

Likewise, in <u>Adamson</u>, the court noted the "absence of authority" for plaintiff's proposition. 2011 Mass. Super. LEXIS 32 at *9. In contrast, Eaton has persuasively cited Massachusetts authority to support her argument.

    3.    *Sound reason supports requiring the mortgage and mortgage note to be unified at foreclosure.*

In finding that Eaton is likely to succeed on her claim, the court is cognizant of sound reason that would have historically supported the common law rule requiring the unification of the promissory note and the mortgage note in the foreclosing entity prior to foreclosure. Allowing foreclosure by a mortgagee not in possession of the mortgage note is potentially unfair to the mortgagor. A holder in due course of the promissory note could seek to recover against the mortgagor, thus exposing her to double liability. See <u>5-Star Mgmt., Inc.</u> v. <u>Rogers</u>, 940 F. Supp. 512, 520 (D. E.D.N.Y. 1996); Cf. <u>Cooperstein</u> v. <u>Bogas</u>, 317 Mass. 341, 344 (1944) (noting that allowing a creditor of the mortgagee to reach and apply the interest of the debtor in the mortgage itself would "leav[e] the note outstanding as a valid obligation of the mortgagor to the holder of the note who might possibly be a person other than the mortgagee.").

## CONCLUSION AND ORDER

For the reasons set forth above, Eaton's motion for preliminary injunction is **ALLOWED**. Fannie Mae is hereby enjoined until further order of this court from proceeding with its previously commenced summary process action Housing Court Docket 2010-SP-0379 with respect to Eaton's residence at 141 Deforest Street, Roslindale, Massachusetts, or from interfering with the Eaton's possession and enjoyment thereof.

Fannie Mae has requested the disposition of this case be accelerated due to the delay interposed by Housing and Superior Court proceedings. For that reason, and recognizing that the validity of foreclosure deeds is a matter of urgent concern, the case is scheduled for a Rule 16 conference on June 29, 2011 at 2:00 PM to establish the tracking order.

So ordered:

*Frances A. McIntyre*

Frances A. McIntyre
Justice, Superior Court

June 17, 2011