UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    Civil Action No. 1:11-cv-11098-WGY
ORATAI CULHANE,    \*
   \*
         Plaintiff,    \*
v.    \*
   \*
AURORA LOAN SERVICES OF    \*
NEBRASKA,    \*
   \*
         Defendant.    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AURORA LOAN SERVICES, LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court Order dated September 7, 2011, Aurora Loan Services LLC, ("Aurora") (incorrectly named in the caption), by and through its attorneys, hereby submits this Supplemental Memorandum in Support of its Motion for Summary Judgment.

### I. ARGUMENT

**A. Mortgage Electronic Registration Systems Inc. ("MERS") Lawfully Assigned the Culhane Mortgage to Aurora.**

MERS, by and through its MERS Certifying Officer, JoAnn Rein ("Ms. Rein"), lawfully transferred the Culhane Mortgage to Aurora. With the exception of the Massachusetts Superior Court decision in *Eaton v. Fed. Nat. Mort. Ass'n*, slip op., C.A. 11–1382, (Mass.Super. Ct. June 17, 2011), it is well-settled in Massachusetts that MERS, as mortgagee and nominee for Preferred Financial Group, Inc., DBA Preferred Mortgage Services, had the legal right to assign the Culhane Mortgage to Aurora.[1]

---

[1] In addition to the authorities cited in the Pre-Trial Memorandum, Judge Sands and Judge Stearns have recently held that "MERS may assign mortgages for which MERS is the mortgagee." *Deutsche Bank National Trust Company, as Trustee v. Cicchelli*, 2011 WL 3805905 (Mass. Land Court Aug. 24, 2011); *Archambault v. Aurora Loan Services*

Ms. Rein, a MERS certifying officer as well as an employee of Aurora, was authorized to execute the assignment on behalf of MERS. Ms. Rein's authority originates both from the corporate resolution and authorizing documents executed by MERS and from MERS' own acknowledgement that said authority was granted and has not been rescinded. *See* MERS Memorandum filed herein at page 11 and Exhibit A; *see also Kiah v. Aurora Loan Services, LLC.,* 2011 WL 841282, at * 8 (D. Mass. Mar. 4, 2011).

That Ms. Rein wears "two hats" does not undermine the authority given to her by MERS to execute the assignment. This issue was specifically addressed by Judge Sterns in *Archambault*, which involved an assignment of mortgage also executed by Ms. Rein as a MERS certifying officer. Judge Sterns specifically held that "Joann Rein had actual authority as a Vice President of MERS to assign the Archambaults' mortgage (acquired by MERS on July 13, 2005)." *See Archambault*, at 2.

1. The Role of MERS[2] in the Culhane Mortgage

MERS's general role in mortgage assignments is more fully addressed by MERS in its separate briefing. It is addressed herein only for background.[3]

At a most basic level, MERS administers an electronic registration and tracking system, known as the MERS system, that "track[s] the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity." *In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006); MERS,

---

Civil Action No. 11-CV-10373 (Sterns, D.J. September 13, 2011)("the court agrees with Aurora that MERS has the legal capacity to act as the agent of a valid note holder and that MERS was acting as nominee for GN Mortgage and its 'successors and assigns,' which includes Aurora."). *See* Exhibit A (a true and correct copy of the presently unpublished Memorandum and Order on Defendant's Motion for Summary Judgment is attached hereto.)
[2] MERS is the wholly owned subsidiary of MERSCORP, Inc.
[3] From the MERS website (www.mersinc.org) *See* Exhibit B (a true and correct copy of the MERS Rules of Membership); Exhibit C (a true and correct copy of the MERS Terms and Conditions); Exhibit D (a true and correct copy of the Procedures Manual); Exhibit E (a true and correct copy of the Quality Assurance Quick Reference Guide); Exhibit F (a true and correct copy of the Quality Assurance Procedures Manual).

http://www.mersinc.com. For loans registered in the MERS system, MERS is designated the mortgagee of record, as nominee for the lender and its successors and assigns. *Id.* The lender and mortgage servicing company, if applicable, use the MERS system to track the ownership and subsequent transfers of the loan. *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 83 (N.Y. 2006). "During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS' private system." *Id.* When the beneficial interest in a loan is sold, through endorsement and delivery of the note, MERS remains nominee for the new note holder and mortgagee of record, either until the collection activity commences on the loan and an assignment is required or the loan is transferred to a non-MERS member. *Jackson,* 770 N.W.2d at 491.

2. The Culhane Mortgage

The Culhane Mortgage was originally held by MERS as nominee for Preferred Financial Group, Inc., DBA Preferred Mortgage Services, its successor and assigns. Pursuant to the Culhane Mortgage, MERS 1) is the nominee for the lender and its successors and assigns;[4] 2) is the mortgagee; 3) holds legal title to the interest granted by the borrowers and 4) has the power to enforce the terms of the mortgage. By executing the Culhane Mortgage, the Plaintiff consented to MERS' role as nominee and authorized MERS "to take any action required of the Lender" and its successors and assigns, to enforce their rights under the Culhane Mortgage. As numerous courts have held, MERS has the customary rights of a mortgagee and may act on behalf of the lender and its successors and assigns in executing an assignment of mortgage. *See Bassilla v. GMAC Mortgage*, No. 09-J-519 (Mass. App. Ct. Dec. 4, 2009) ("[T]he lender's nominee and record title

---

[4] "A nominee is generally understood as a person designated to act in place of another." *In re Huggins*, 357 B.R. at 183 (citing BLACKS LAW DICTIONARY (8th ed. 2004)).

3

holder [MERS] had the ability to make a valid assignment."); *In re Lopez,* 446 B.R. at 18-19("[MERS] could, by virtue of its nominee status, transfer the Mortgage on behalf of the Note holder"); *Kiah,* 2011 WL 841282, at *7-8 (MERS assignment valid); *Aliberti,* 2011 WL 1595442, at *5 (MERS assignment valid and binding); *In re Marron,* 2011 WL 2600543, at *4 ("In Massachusetts . . . courts have generally held that MERS may both foreclose and assign mortgages held in its name"); *Ciccheli,* 2011 WL 3805905, at *5 (MERS had authority to assign mortgage); *Schwartz v. HomEq Servicing,* 2011 WL 3667494, at *5 (Bankr. D. Mass. Aug. 22, 2011)(As mortgagee, MERS has authority to assign the mortgage); *Randle v. GMAC Mortg., LLC,* 2010 WL 3984714, at * 1 (Mass. Land. Ct. Oct. 12, 2010) (treating MERS assignment as valid without question). MERS properly and lawfully assigned the mortgage to Aurora. Plaintiff's argument relating to the Culhane Note is unavailing, as the identity of the note holder is not relevant in Massachusetts to the whether a mortgage's assignee may foreclose. *In re Marron,* 2011 WL 3800040 at *2)("upon default, HSBC as assignee of the mortgage was entitled to foreclose even without possession of the note.")(*citing Saxon Mortg. Serv, Inc. v. Arazi,* Misc. Case No. 10 Misc. 442037, Order dated July 12, 2011 (Mass. Land Ct.)(Piper, J. (citing *In re Marron* as a "correct statement of Massachusetts law")).

But even if the Court in this case were to look to the Culhane Note, the transfer of the Culhane Note to Deutsche Bank Trust Company America as Trustee (the "Trustee") automatically resulted in the transfer of all equitable right, title and interest in the Culhane Mortgage to the Trustee. *U.S. Bank, Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 652 (2011); *Boruchoff v. Ayvasian,* 323 Mass. 1, 10, 79 N.E.2d 892, 897 (1948) ("Where a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation, and, therefore, held in trust for the benefit of the owner of the obligation."); *Weinberg v. Brother,* 263 Mass. 61, 62, 160 N.E. 403, 403 (1928)("The mortgage is merely

4

security for the note. As the note had been transferred to the real owner, the defendant would hold the mortgage in trust for the owner, even if there had been no assignment of it."). There was no improper "split" of the note and mortgage precluding foreclosure, as plaintiff contends. *See Bassilla*, No. 09-J-519 (rejecting borrower's argument that MERS split the mortgage from the note); *In re Lopez*, 446 B.R. at 18-19 ("Though MERS never held the Note, it could, by virtue of its nominee status, transfer the Mortgage on behalf of the Note holder. Indeed, such a transfer appears to have been contemplated by the Mortgage . . . ").

The procedure of the foreclosure in this case is identical to foreclosures other Massachusetts Courts have consistently upheld. Until the assignment was executed, MERS acted solely as nominee for the Trustee and held the mortgage in trust for it. *See Ibanez*, 458 Mass. at 652; *Kiah*, 2011 WL 841282, at *8; *In re Marron*, 2011 WL 2600543, at *4-5. MERS, as it could lawfully do, then assigned the Culhane Mortgage to Aurora. After the assignment, Aurora became the assignee of record of the Culhane Mortgage, with full power under Massachusetts law to foreclose.

### The Trustee Authorized Aurora to Foreclose.

Aurora has demonstrated that it is legally entitled to foreclose not only because it is the assignee and present holder of the mortgage, but also because it is authorized to do so as servicing agent for the holder and owner of the Culhane Note.

To be clear, it is Aurora's position that, pursuant to *Ibanez*, an assignee of the mortgage may foreclose, and no other showing by the assignee is required. *Ibanez*, 458 Mass. at 646 ("a mortgage holder can foreclose on a property . . . by exercise of the statutory power of sale, if such power is granted by the mortgage itself.") In Massachusetts, consistent with the express terms of the mortgage contract, and pursuant to G.L. c. 183, § 21 and G.L. c. 244, § 14, a mortgagee has the right to foreclose pursuant to the statutory power of sale as set forth in the mortgage. G.L. c.

5

183, § 21 ("the mortgagee . . . may sell the mortgaged premises . . ."; G.L. c. 244, § 14 ("The mortgagee . . . or person authorized by the power of sale may, upon breach of condition and without action, do all the acts authorized or required by the power [of sale]"). To invalidate this specific grant of authority "would lead to anomalous and perhaps inequitable results, to wit, if [the mortgagee] cannot foreclose though named as mortgagee, then either [the note holder] can foreclose though not named as mortgagee or no one can foreclose, outcomes not reasonably or demonstrably intended by the parties." *In re Huggins*, 357 B.R. at 183. Moreover, the Culhane Mortgage itself reflects no intent on the part of the borrower to prohibit MERS or its assigns from foreclosing on the property if another party held the note. Thus, based on the documents themselves, the authority to foreclose upon default was given by the Plaintiff to MERS and MERS assigned the authority to Aurora, which now has that power and right.

But in this case, given the Court's inquiry, Aurora respectfully submits the attached Exhibit D that reflects the transfer of authority from the prior servicer named in the Pooling and Servicing Agreement, previously submitted by the Plaintiff, to Aurora. *See* Exhibit G (a true and correct copy of the Master Servicing and Assumption Agreement is attached hereto). As the loan's servicer, Aurora has the right to act for the loan's owner and foreclose.

Plaintiff's contention that her loan may not have been transferred to the Trust is without merit and lacks any evidentiary support. Aurora has produced the original Culhane Note, specifically endorsed to the Trustee, and the Court has already held that the undated endorsement on the Culhane Note is not at issue, (Transcript of September 7, 2011, Proceedings at 3) Aurora has nonetheless produced the Mortgage Loan Schedule that establishes that the Culhane Loan was in fact transferred to the Trust. *See* Exhibit H (a true and correct copy of the Mortgage Loan Schedule is attached hereto)

Aurora, as an assignee of MERS, the present holder of the Culhane Mortgage, and the loan's servicer, has the requisite standing, authority and power to take all necessary actions to foreclose. *See* Exhibit G.

### B. **The Plaintiff Lacks Standing to Challenge the Assignment of Mortgage.**

The Plaintiff, as a non-party to the contract, has no standing to challenge the contract between MERS and Aurora. The argument is not that the Plaintiff some how waived her right to challenge the contract implicitly or explicitly, but rather that as a non-party to the contract she can not challenge it.

The Plaintiff-borrower is "uninvolved and unaffected" with respect to whether the assignment of the Culhane Mortgage was executed by one with authority to do so. *Bridge v. Aames Capital Corp.*, 2010 WL 3834059, at * 4-5 (N.D. Ohio 2010) (Regarding an assignment of plaintiff's mortgage, "[plaintiff's] role in the exchange . . . and how it affects her contractual obligations remains the same-uninvolved and unaffected. . . Plaintiff has not suffered any injury as a result of the assignment"). Plaintiff has no standing, therefore, to object or make a claim based thereon. *See id.*, at * 3, 5 ("'Courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee. . . . Given that Plaintiff was not a party to the assignment of the Mortgage between [assignor] and [assignee], neither of which dispute the validity of the assignment, and has not and will not suffer any new injury . . . Plaintiff does not have standing to assert her claim."); *Macksey v. Egan*, 36 Mass.App.Ct. 463, 468-69 (1994) (Only a party or intended third-party beneficiary has standing to challenge the validity of a contract.); *see also Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties."); *In re* Marron at *3("its [Section 54B] plain language establishes that the assignments in this case are binding upon MERS whether or not MERWS or its signing officer

7

had the authority to execute them"); *MHI Shipbuilding, LLC v. National Fire Ins. Co. of Hartford*, 286 B.R. 16, 32 (D. Mass. 2002) ("In Massachusetts, however, a third party . . . cannot raise the absence of consideration as a defense to a suit on the assigned cause of action.") (citing *Barker v. Danner*, 903 S.W. 2d 950, 955 (Mo. App. 1995) (the third party debtor is generally not prejudiced by a lack of consideration between assignor and assignee)); CJS ASSIGN § 132 ("[I]f the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes."). As stated by the court in *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, in holding the borrower lacked standing to challenge the assignment:

> [The underlying contract] is between [Obligor] and [Assignor]. [Assignor's] assignment contract is between [Assignor] and [Assignee]. The two contracts are completely separate from one another. As a result of the assignment contract, [Obligor's] rights and duties under the [underlying] contract remain the same: The only change is *to whom* those duties are owed.... [Obligor] was not a party to [the assignment], nor has a cognizable interest in it. Therefore, [Obligor] has no right to step into [Assignor's] shoes to raise [its] contract rights against [Assignee]. [Obligor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.

717 F.Supp.2d 724, 736-37 (E.D. Mich. 2010), *aff'd*, 2010 WL 4275305 (6th Cir. Oct. 28, 2010). (citing *Ifert v. Miller*, 138 B.R. 159 (Bankr. E.D. Pa. 1992)). As a nonparty to the assignment, the Plaintiff lacks standing to challenge the intent of the parties to the transfer and the validity of the transfer. Accordingly, the Court's concerns, while not pled by the Plaintiff in her Complaint, should not form a basis to deny summary judgment because even if pled by the Plaintiff they would not entitle her to relief.

### D. A Challenge to the Signing Authority of the Signer of an Assignment of Mortgage, Even If Successful, Would Not Render an Assignment "Void".

Even if the assignment of mortgage was not executed by one with authority to do so, that fact may render it voidable, by the assignor, but not void. *See, e.g., Greene v. Reconstruction Finance Corp.*, 24 F.Supp. 181, 183 (D. Mass. 1938) (mortgages executed without authority of majority of stockholders of corporation were not void but were voidable only and subject to ratification by stockholders.); *Commissioner of Banks v. Tremont Trust Co.*, 259 Mass. 162, 179-180 (1927) ("[Officer's] acts in excess of his authority, although voidable by the corporation, legally could be ratified and adopted by it . . ."); RESTATEMENT (SECOND) OF CONTRACTS § 7) (A principal is free to affirm or to disavow the unauthorized promises of its agent, and thus contracts entered into by the agent acting beyond the scope of his authority are not void but are voidable by the principal.)

The assignment of Culhane's Mortgage to Aurora, even if it is voidable by MERS, is a valid and enforceable contract that "imposes on the parties the same obligations as if it was not voidable." *Berenson v. French*, 262 Mass. 247, 260-61 (1928); *see Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 2002 WL 31875204, at *22 (Mass. Super. 2002) ("'Voidable' imports a valid *act which may be avoided, rather than an invalid act which may be confirmed*")(emphasis added); *Murphy v. Marland*, 62 Mass. 575, 576 (1851) (assignee under voidable assignment made in fraud of creditors might specifically enforce the assigned contract against the debtor); *Penniman v. Freeman*, 1855 WL 5666, at *2 (Mass. 1855) ("[A] voidable assignment, made by a commissioner having jurisdiction of the case, is conclusive evidence of the authority of the assignee to sue"); RESTATEMENT (SECOND) OF CONTRACTS § 7 ("The propriety of calling a transaction a voidable contract rests primarily on the traditional view that the transaction is valid and has its usual legal consequences until the power of avoidance is exercised."). The

9

parties to the assignment of mortgage, i.e., the assignor (MERS) and the assignee (Aurora), have not and do not contest its validity.[5]

## II. CONCLUSION

Based on the foregoing, Aurora respectfully requests that its Motion for Summary Judgment be granted in its entirety.

Respectfully Submitted,

Aurora Loan Services, LLC
By and through its counsel,

Dated: September 19, 2011

/s/ Reneau J. Longoria
Reneau J. Longoria, Esq. (BBO #635118)
Erin P. Severini, Esq. (BBO #654644)
Stephen M. Valente, Esq. (BBO#663118)
Doonan, Graves and Longoria, LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915
Tel. (978) 921-2670
rjl@dgandl.com

---

[5] Notably, where a principal acquiesces to its agent's unauthorized conduct or fails promptly to disavow the conduct after disclosure of material facts, the power to avoid the legal interests created by the agent's conduct is extinguished. *See, e.g., Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 18 (1997).