UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO: 1:11-CV-11098-WGY

ORATAI CULHANE,
Plaintiff

v.

AURORA LOAN SERVICES, LLC

Defendant

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Ms. Culhane opposes Aurora's Motion for Summary Judgment. Ms. Culhane disputes the legal standing of Aurora to foreclose on her home and has asserted her constitutional right to a jury trial in an effort to keep her property.

Aurora has filed a supplemental memorandum of law in support of its Motion for Summary Judgment, attempting to demonstrate that it is the proper party and has done all things proper in its role as servicer and agent for the lender and foreclosing entity. In this opposition, Ms. Culhane asserts that since Aurora cannot show that the note was received into the RALI 2006 Series Q05 Trust by the cut-off date as set out in the Pooling and Servicing Agreement, under New York Trust law, the trustee has no standing to foreclose on the mortgage.[1] This would make Aurora's herculean attempt to show it had its ducks in a

[1] The pooling and servicing Agreement states that the cut-off date is May 1, 2006. (PSA p. S-3, Exhibit ).In order to receive favorable I.R.S. status and to give the trustee powers over the loan, all mortgage documents must be received by the trust prior to the cut-off date. (P. 77 of prospectus "Material Federal IncomeTax

row as agent, assignee, endorsee, and attorney-in-fact meaningless, since it does not have the power to foreclose. The Sponsors of the Securitization Trust in which Ms. Culhane's loan was allegedly sold to were wholly owned subsidiaries of General Motors Acceptance Corporation Mortgage Group (GMACM) and were recently sued by the Federal Housing Finance Agency (F.H.F.A.) for misrepresentations and fraud in the creation and marketing of the exact securities created by the trust at issue in this case. Although the F.H.F.A. suit focused on the creation and marketing of the securities, the federal agency accused the trust's creators of "abusive or reckless lending and servicing practices, including commingling funds from custodial bank accounts and questionable and unlawful foreclosure practices…". (*See F.H.F.A v. Ally Financial, Inc. et al* , Complaint filed in NY Supreme Court, September 2, 2011, par. 162 attached hereto as Exhibit "A". See also Consent Orders form the Office of Thrift Supervision of April 13, 2011, describing problems with Aurora and MERS previously filed as Exhibits "A" and "B" to Affidavit of Martin I. Flax, Document 25 in Pacer system for this case. )

MERS has submitted a self-serving "bench memorandum of law," admitting it is a corporation with no employees, claiming to serve only as "mortgagee of record" and asking the Court to approve and accept its system of private membership, private rulemaking, and private powers. The MERS system was created as a mortgage-industry sponsored gambit to accelerate the production of mortgage-backed securities for investors with the arrogant and untested premise that while bypassing all fifty states' mortgage recordation systems, it would, at the same time, create private powers of foreclosure in its name as both "nominee and mortgagee" that would somehow comply with all fifty states' local foreclosure laws,

---

Consequences"); A trustee's act that is contrary to the trust agreement is void. N.Y. Estates, Powers and Trusts Law §7-2.4; "

rules and customs. In a bit of stunningly ironic rhetoric, this admittedly empty corporate structure with no employees and no beneficial interest in Ms. Culhane's mortgage, now asks the Court to deny Ms. Culhane standing to challenge its powers of assignment while the roof over her family's head is at stake.

What MERS's "Bench Memorandum" would have this Court believe is that courts "uniformly" accept MERS's powers. See Bench Memorandum of Law filed by MERS, p. 11. This is misleading at best. To the contrary, the MERS system is not uniformly accepted by courts and has been called into question and, in many cases, successfully challenged throughout the country where borrowers, banks, or governments have the resources, the will, and/or the time to seek judicial review of MERS's behavior.[2] In Massachusetts, the authority of MERS to act as both mortgagee and nominee remains an open question.[3]

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2006, Ms. Culhane signed a Note to Preferred Mortgage ( Preferred) and a Mortgage to MERS, as nominee for Preferred. The Mortgage was for $548,000.00. It was a variable loan rate starting at 1.5% with a balloon payment due after thirty years. The payments of principal and interest were $1,891.26 for thirty years with a balloon payment due after thirty years on May 1, 2036. The note now apparently has two undated endorsements which appear on the body of the note and another undated endorsement which appears on an allonge which Aurora claims is now part of the original note. The allonge did not appear in Aurora's first filing with the Court in opposition to Ms. Culhane's Motion for a Temporary Restraining Order. (See

---

[2] See e.g. *Bank of N.Y. v. Silverberg*, 2011 NY Slip Op. 5002 (N.Y. App. Div. 2d Dep't 2011), *Residential Funding Co. LLC v. Saurman*, 2011 Mich. App. Lexis 719 (Mich. Ct. App. Apr. 21, 2011); *Mortgage Elec. Registration Sys. V. Saunders*, 2010 Me. 79 (Me. 2010); *In re: Barry Weisband*, U.S. Bankr.Ct., Docket No. 09-BK-05175-EWH, Memorandum Decision March 29, 2010.

[3] *Bank of New York, Trustee v. KC Bailey*, n3, 10SJC 801 (August 4, 2011)

Exhibit "A" to Defendant's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order filed June 21, 2011 as Document 6 in the Pacer System for this case.)

On June 17, 2011 Ms. Culhane filed a Complaint and Motion for Temporary Restraining Order in the Norfolk Superior Court as civil action number 11-cv-00922. On or about June 17, 2011, Defendant, Aurora Loan Services, removed the matter to this Court and immediately filed a Motion for Summary Judgment. The foreclosure auction is currently scheduled to take place in October.

## III. LEGAL STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is only appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**IV. ARGUMENT**

A. The Defendant Does Not Have Standing to Foreclose Because the Plaintiff Has Not Provided Evidence That the Note Was Transferred into the Trust by the Cut-Off Date.

Aurora claims that it has the authority to foreclose on behalf of the trustee. However, if the trustee did not receive delivery of the note as required by the trust document (pooling and servicing agreement), the trustee does not have the authority to foreclose. Furthermore, if the note was transferred into the trust in a manner that did not comply with the rules of the pooling and servicing agreement, the trust does not own the loan. *See N.Y. Estates, Powers and Trusts Law* §7-2.4 -- A trustee's act that is contrary to the trust agreement is void.) If the trust does not own the loan, the trustee has no power to foreclose.

The Servicing and Pooling Agreement provides that the loan must be transferred into the trust on or before the cutoff date of May 1, 2006. (See Prospectus previously filed with the Court as Exhibit C to Affidavit of Martin I. Flax filed August 5, 2011, p. S-3) The Defendant has not proven that the loan was transferred into the trust by this date. The Defendant has provided a computer generated document entitled Location History for Collateral File which has as its first date, April 15, 2008, nearly two years after the note was supposed to have been transferred into the trust. (*See* Location History of Collateral File filed with the Court as attachment 3 to letter from Defendant's Counsel to Clerk of Court dated September 9, 2011.) The Defendant has also claimed to show that the loan was identified

when the loan was "in fact transferred to the Trust." See Aurora's Supplemental Memorandum in Support of Its Motion for Summary Judgment at p. 6 and Exhibit "H" attached thereto. This spreadsheet (Exhibit "H") is undated and cannot prove a timely legal transfer as Aurora has claimed.

B. The Defendant's Interpretation of *Ibanez* As Not Requiring the Foreclosing Entity to Hold the Note Is Misplaced

Aurora contends that Massachusetts law does not require a foreclosing entity to prove that it holds the mortgage note or that it has authority to foreclose on behalf of the legal note holder. Plaintiff disagrees. In *U.S. Bank National Association v. Ibanez*, 458 Mass. 537 (2011), there was no dispute that the foreclosing entities were the note holders. *Ibanez* ruled that the assignment of the mortgage must be effective *before* foreclosure in order for the foreclosure to be valid. Where note holders were separated from the mortgage due to a lack of effective assignment, the note holders had only a beneficial interest in the mortgage. The *Ibanez* Court did not address the authority of the assignee of the mortgage not in possession of the note to foreclose. *See Eaton v. Federal National Mortgage Association,* Suffolk Superior Court No. 11-1382 at p. 5.[4]

Although, Aurora seeks to have this Court discount the precedent cited in *Eaton* for the note holder requirement, *Ibanez* itself cites *Barnes v. Boardman*, 149 Mass. 106 (1889). *Barnes v. Boardman* states the general rule that an assignment or transfer of a mortgage debt carries with it an equitable right to an assignment of the mortgage. Id. 149 Mass. at 114. *Barnes v. Boardman* refers to *Wolcott v. Winchester,* 81 Mass. 461 (1860),which is part of a long line of Appellate Court cases cited in *Eaton* that hold foreclosing entities must hold the mortgage note to foreclose. In addition, *Young v. Miller,* 72 Mass. 152 (1856), holds that there must be unity between the note and the mortgage for the foreclosing entity to validly foreclose. In *Young,* the Court considered

[4] Eaton is currently on an expedited appeal before the full panel of the Supreme Judicial Court with oral argument scheduled for October 3, 2011.

whether the bare note-holder had the authority to foreclose without first becoming holder of the mortgage and concluded that it did not. *Id.,* 72 Mass. at 154.

*In Re Marron*, 2011 Bankr. LEXIS 2487 (Bankr. D. Mass. June 29, 2011), a Bankruptcy case cited by the Defendant that recognizes MERS' authority to foreclose as a mortgage nominee, arose out of a Creditor's Motion for Relief from the Automatic Stay. This case is distinguishable in that when a bankruptcy court decides a Motion for Relief from Stay, it does not fully adjudicate the merits of the creditor's claims but, rather, is limited to determining "whether a creditor has a colorable claim to property of the estate." *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 32 (1st Cir. 1994). Furthermore, *Marron* relies at least in part on the private MERS Rules and Definitions created by MERS and posted on a public website established for its "Members," who consist of nationwide "mortgage lenders, loan servicers, law firms and other parties involved in the residential mortgage lending business." (See *Marron* at p. 3, citing the MERS Rules website location atc http:// www.mersinc.org/files/filedownload.aspx?id=172 & table=ProductFile**.** [5] This Court is not bound to adhere to MERS' own membership rules, which were created in an effort to cater to the lending industry's wish for a more convenient and economically advantageous private lender registry system.

Furthermore, in *Bank of New York, Trustee v. KC Bailey*, 10SJC 801 (August 4, 2011), a recent Supreme Judicial Court decision allowing the Housing Court to entertain foreclosure-based title defenses raised by former homeowners, the Court noted that the authority and capacity of MERS to act in foreclosures has not as yet reached the Supreme Judicial Court. (*See Bank of New*

---

[5] The Defendant has provided the Court with recent MERS membership rules and documents, some of which appear to have become effective only in 2011. Although, the Court does note have to give effect to these rules, Ms. Culhane nonetheless objects to these submissions and calls on the Defendant and MERS to file with the Court the rules in effect on the effective dates of the notes, mortgage and assignments at issue so that the Court can determine if different rules were in place at the time of the events at issue in this case.

*York, Trustee v. KC Bailey,* n.3 stating, "Mortgage Electronic Registration Systems acts as nominee and as mortgagee of record for its members and appoints itself nominee, as mortgagee, for its members' successors and assigns. In this case, we are not faced with the issue whether MERS may properly be both the mortgagee and an agent of the mortgagee, and we do not decide in which capacity MERS acted here.").

In addition, the U.C.C.'s possession requirement (M.G.L. c. 106, §3-301) is still good law in Massachusetts. That section states:

> Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or subsection (d) of section 3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

It should be noted that this U.C.C. requirement retains continuing vitality in Massachusetts because of its strong public policy purpose –"to protect the Debtor from multiple enforcement claims to the same note." *See Marks v. Braunstein*, U.S Bankruptcy Court Docket No. 09-11402, *citing Premier Capital, LLC v. Gavin*, 319 B.R. 27, 33 (1st Cir. 2004). *See also First National Bank of Cape Cod v. North Adams Hoosac Sav. Bank*, 7 Mass. App. Ct. 790 (1979) (The UCC applies to mortgage notes.)[6]

In a recent Massachusetts Bankruptcy Court case, *In Re Schwartz*, Docket No. 06-42476, (Aug. 22, 2011), Judge Hoffman, who has ruled that MERS may foreclose in its own name -- - nevertheless tracks the closing date and loan sale to ensure that MERS was foreclosing on behalf of an actual note holder. In the instant case, based on the limited information voluntarily provided to her, Ms. Culhane has reason to believe that Aurora has not shown --

[6] See *In re Veal*, 450 B.R. 897, 908-922 (9th Cir. BAP 2011) for an analysis of the applicability of the U.C.C. in determining who has the right to enforce notes secured by real property.

and likely cannot show--that the note was properly transferred into the trust prior to the cut-off date pursuant to the terms of the Pooling and Servicing Agreement. [7]

C. Ms. Culhane Has Standing to Challenge the Assignment From MERS to Aurora.

Although Aurora makes much of the fact that Ms. Culhane's signature on the mortgage contract provides the consent for MERS's attempts to define itself and its rights as mortgagee, Massachusetts does not allow a private contract to shield a party from responsibility for a violation of a Massachusetts statute. *See Henry v. Mansfield Beauty Academy, Inc.,* 353 Mass. 507 (1968). This proposition holds true particularly in this case where the contract is drafted by the lender, involves parties of disparate sophistication and bargaining power and where the private contract implicates public policy affecting all homeowners in Massachusetts.

Both Aurora and MERS allege that Ms. Culhane lacks standing to challenge the assignment from MERS to Aurora, citing *MHI Shipbuilding LLC v . National Fire Insurance Company of Hartford*, 286 B.R. 16, 32 (D. Mass. 2002), and several other cases that make the argument that the borrower has suffered no prejudice and has no more right than a complete "stranger" to the transaction. These cases are inapposite because Ms. Culhane has demonstrated prejudice where as a consequence of the improper assignment, a foreclosure prosecuted by the wrong party will ensue, resulting in the taking of Ms. Culhane's home without extinguishing her debt.

[7] See Defendant's attachment number 3 to letter from Defendant's counsel to Clerk of Court of September 9, 2011 (Location History of Collateral File" which shows the location of the note beginning with April 15, 2008 thereby leaving a gap of nearly two years from execution where the note is unaccounted for. Defendant has also not disclosed the MERS Milestone Report which Plaintiff has requested from Defendant's counsel that would shed additional light on the history of the loan documents.

Ms. Culhane is not a complete stranger to the transaction, because in the MERS system, a mortgage assignment may be the first public step in the commencement of the foreclosure proceedings where the originating lender has gone out of business or sold its assets and the underlying holder of the note is unknown. The defaulting borrower must attempt to pay off or negotiate a modification with one party while having her family house auctioned off by another party with conflicting interests. Furthermore, a recent Alabama case held that a mortgagor was a third-party beneficiary to the Pooling and Servicing Agreement since "…without such Pooling and Servicing Agreements, [mortgagors]….would never have been able to obtain financing." *See Horace v. Lasalle Bank National Association, et al*, Russell County Circuit Court no. CV08-363, Order dated March 21, 201, copy attached hereto as Exhibit "B".)

Denying Ms. Culhane standing to challenge the assignment would, in effect, allow MERS and its members to avoid the exact type of scrutiny required to ensure that homeowners and borrowers do not lose their homes due to shoddy recording and record-keeping practices in the mortgage securitization industry--- an industry which has recently been inundated with complaints involving a variety of improper actions with respect to the both the creation and marketing of these instruments as well as the servicers' rush to foreclose on defaulting borrowers.[8]

---

[8] *See F.H.F.A v. Ally Financial, Inc. et al* , Complaint filed in NY Supreme Court, September 2, 2011, par. 162 attached hereto as Exhibit "A". See also Consent Orders from the Office of Thrift Supervision of April 13, 2011 describing problems with Aurora and MERS previously filed as Exhibits "A" and "B" to Affidavit of Martin I. Flax, Document 25 in Pacer system for this case. )

D. There Are Significant Problems with the Purported Assignment From MERS to Aurora

The assignment of mortgage from MERS to Aurora clearly lists the date of assignment as April 7, 2009 but has a line typed in just above the MERS corporate seal and the purported MERS's officer Joanne Rein's signature. The line reads: "Effective date 4/1/2008." The assignment purports to transfer "the said Mortgage together with the Note or other evidence of indebtedness (the "Note")…" MERS is not named on the Note and never held the Note and therefore cannot assign it. If Aurora claims to have the Note-holder's authority to foreclose, it clearly cannot obtain it from MERS –an entity that never held the Note.

The authority of MERS officers who work for other mortgage companies and merely act as certifying officers for MERS merits this Court's scrutiny. It wasn't until April 2010 that MERS apparently put in place a minimal questionnaire for applicants to complete in order to obtain MERS officer certification. *See* MERS Policy Bulletin 2010-1. Presumably, before April, 2010, the requirements were such that anyone working for a MERS member willing to pay the fee could become a certifying officer.

The date of the actual assignment and the recording date of the assignment are significant because the note and the mortgage must be in unity prior to the commencement of the foreclosure. Where, as here, there are genuine issues of material fact in this regard, summary judgment should not issue.

**V. CONCLUSION**

For the foregoing reasons and based on disputed facts revealed in Plaintiff's previous filings with the Court, Ms. Culhane respectfully requests that the Court deny Defendant's Motion for Summary Judgment and allow the matter to proceed to a jury trial.

Respectfully submitted,
ORATAI CULHANE

By her attorney

MARTIN I. FLAX

Dated: October 3, 2011

/s/Martin I. Flax
Martin I. Flax
BBO # 543665
4 Kings Court
Dedham, MA 02026
(781) 329-4850
flaxlaw@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 3, 2011.

_/s/Martin I. Flax ___
Martin I. Flax